**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose G. Puente, Claimant Manuel Hernandez, et al., <br><br>Plaintiffs, <br><br>vs. <br><br>State of Arizona, et al., <br><br>Defendants. | No. CV 97-1734-PHX-RGS <br><br>**ORDER** |

This matter was instituted by the filing of a complaint on August 15, 1977, against the Arizona Department of Transportation ("ADOT") and others. On March 15, 1999, Class Certification was granted pursuant to Fed. R. Civ. P. § 23(b). The class included all Hispanic applicants for an ADOT position and all Hispanic employees of ADOT.

A final consent decree disposing of the class complaint was issued in September 2000. The decree provided that certain named individuals could present claims for damages for alleged ADOT acts of discrimination, retaliation or discriminatory employment policies for the period from January 1, 1994, to December 19, 2000.

The claims of Plaintiff Manuel Hernandez came before United States Magistrate Judge Virginia A. Mathis for a bench trial during the periods November 15-16, 2004, and March 7-10, 2005. Plaintiff's theories of recovery were set forth as follows:

1. The acts of discrimination/retaliation began when Plaintiff complained of discrimination against an African-American co-worker. As acts of retaliation, Plaintiff alleges he was (a) transferred (a defacto demotion) from the ADOT Central Maintenance Building at 1655 West Jackson to another warehouse; (b) threatened; (c) ostracized; and (d) segregated from other workers.

2. Plaintiff filed an EEOC charge in 1995. As a result, he alleges he was retaliated against by two more transfers to new warehouses where he had to set up the warehouses with no assistance, and the acts of derogatory language and segregation continued.

3. In January 1996, Plaintiff filed a second EEOC charge. In March 1996, Plaintiff testified before the Arizona Advisory Committee to the United States Commission on Civil Rights. Plaintiff alleges his warehouse was then closed without any legitimate explanation, and he was reassigned to a position at ADOT's Traffic Operations Warehouse where he currently works. In this new assignment, his duties involve more manual labor, and he does not use his warehouse operations skills. Plaintiff's salary and job title are the same but due to the nature of the duties, Plaintiff alleges this was a demotion.

4. Plaintiff also alleges that when more desirable jobs involving purchasing of supplies were filled, he was not notified and not aware so he could not apply for the jobs.

5. Plaintiff alleges his former Caucasian supervisor, Dennis Kasl, yelled at and otherwise demeaned minority employees, and when the minority employees complained to Victor Ausbun in 1997, nothing was done. Complaints were made to the ADOT Affirmative Action Office and nothing was done.

  6. Plaintiff alleges in November 1997, he received a 1% merit increase while Caucasians in the warehouse who received the same ratings received a 2.5% increase.

  7. Finally, Plaintiff alleges that all of the acts of discrimination over the years have caused him severe emotional distress and mental anguish. He also alleges that the failure to give salary increases, promotions, etc. have affected his pay grade and salary.

On June 16, 2005, the Magistrate Judge issued a Report and Recommendation in favor of Defendants. Plaintiff filed Objections to the Report and Recommendation on July 12, 2005. Defendants filed a Response to the Objections on August 18, 2005. Supplemental authority was filed by Plaintiff on August 31, 2005, and the Defendants responded on September 14, 2005. Thereafter, Plaintiff filed an Amended and Corrected Second Citation of Supplemental Authority on February 21, 2006, and a Third Citation of Supplemental Authority on June 23, 2006.

Oral argument with respect to the Magistrate Judge's Report and Recommendation was held, and the matter was submitted to the District Court for ruling.

## STANDARD OF REVIEW

In the Federal Magistrate's Act, Congress provided that, when reviewing a magistrate judge's report and recommendation, district court judges "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991). De novo determination applies to all objections made to the report and recommendation, including objections to credibility findings. *See Taylor v. Farrier*, 910 F.2d 518, 521 (8th Cir. 1990). The court must make its de novo determination based on a review of the record, and, if an evidentiary hearing was

1  held, a review of the transcript of that proceeding. *See id.* The district court in its discretion
2  "may also receive further evidence or recommit the matter to the magistrate judge with
3  instructions." 28 U.S.C. § 636(b)(1)(C).

**DISCUSSION**

5  The Court has conducted a review of the record before it, including certified
6  transcripts of the evidentiary hearings conducted on November 15 and 16, 2004, and on
7  March 7, 2005, and uncertified transcripts of the hearings conducted on March 8, 9, and 10,
8  2005, the Magistrate Judge's Report and Recommendation, each of Plaintiff's Objections, and
9  Defendants' Responses thereto. The Court has also considered the positions presented by the
10 parties at oral argument on October 31, 2005, as well as the applicable law, including
11 Plaintiff's citations of supplemental authorities. Further, the Court previously has heard the
12 testimony of Plaintiffs Manuel Hernandez, Frances Ortiz, Irene Simonetti, and Rose Vega
13 during the hearings on Plaintiffs' Motion for Preliminary Injunction.

14 The Court sustains Plaintiff's objection, on the basis of relevancy, to testimony
15 concerning his eighty hour suspension in 1993 for allegedly fraternizing with inmates of the
16 Arizona Department of Corrections, and such testimony may be deemed eliminated from the
17 record. With respect to Plaintiff's remaining Objections, except for those relating to
18 Plaintiff's claim of a hostile work environment, the Court finds Plaintiff's arguments
19 unpersuasive.

20 The Court accepts the parties' stipulated facts and all of the Magistrate's Findings and
21 Conclusions except those set forth in paragraph N and the final conclusion that Plaintiff did
22 not carry his burden of proving discrimination.

23 With respect to Plaintiff's claim of discrimination because he was exposed to a hostile
24 work environment, the Court finds that the following evidence sustains said claim.

25 Plaintiff's testimony establishes that he observed numerous problems occurring
26 between 1992 and 1994, where he would hear a lot of racist remarks. Plaintiff testified that
27 certain co-workers would use the word "nigger" a lot, especially about African-American co-

1  worker, Arthur Stanley.  Plaintiff related that they would say he was a "lazy nigger," a
2  "stupid nigger."  Plaintiff reported this to the physical plant director, Bill Rossiter, and the
3  section manager of GOG, Ron Courter.  The use of the term continued in their break room
4  and was also used with respect to another African-American, Marcus Clay.  Individuals in
5  the break room who used this term included Mike Welda and other specifically named
6  individuals.  Plaintiff testified that GOG manager Courter said, "I'm going to take care of the
7  situation," but that nothing changed - it never stopped.  In about 1993, Plaintiff went to the
8  Affirmative Action Office and advised Tom Moore that he was sick of listening to the word
9  "nigger" and racial remarks about Hispanics and that he had reported it to management but
10 that nothing was done about it.  Plaintiff further testified that during this same time frame,
11 the same group of individuals used the words "spick" and "wetback."  They would say things
12 like, "Hey, wetback, are you going to go do the job today?"  Physical Plant Director Rossiter
13 was in the break room when terms such as "nigger," "wetback," and "spick" were used.
14 Plaintiff testified that he heard   racial remarks such as "wetback" and "spick" directed
15 personally at himself.  At one point Steve Dommer called Plaintiff a "stupid dumb Mexican."
16  Plaintiff further testified that he had notes left on his desk calling him "a nigger lover," "ass
17 hole," and "you fucking Mexican."  Plaintiff gave these notes to GOG Manager Ron Courter
18 who said he would check into it, but Plaintiff never heard anything further about the notes.
19 At some point in 1994, Plaintiff came into his warehouse and looked at his uniforms and
20 noted that there were greasy fingerprints all over the clothes.  Plaintiff went to advise the
21 then GOG Manager Scott Cole.  The Manager's comment was, "You got to be careful how
22 you eat your menudo, Manny."  Plaintiff felt that Mr Cole's comment was demeaning, and
23 he felt upset about it.
24      In view of the  facts set forth above and other evidence concerning the content,
25 frequency, and duration of the racially offensive conduct and the testimony of Plaintiff
26 concerning its effect on him, the Court finds and concludes that for an unacceptable period
27 of time, Mr. Hernandez's  workplace was permeated with discriminatory ridicule and insult,
28

- 5 -

thereby creating a racially hostile work environment entitling Plaintiff to damages for violation of his civil rights.

## CONCLUSION

The claims of Manuel Hernandez and the Report and Recommendation of the Magistrate Judge having been reviewed,

**IT IS ORDERED** adopting the Report and Recommendation in part. [Doc. # 317]

**IT IS FURTHER ORDERED,** with respect to all claims other than the creation of a hostile work environment, adopting the Report and Recommendation recommending that Plaintiff's claims be denied.

**IT IS FURTHER ORDERED** adopting the Report and Recommendation recommending that Defendants' March 8, 2005 Motions to Dismiss be denied.

**IT IS FURTHER ORDERED** with respect to Plaintiff's claim of a hostile work environment, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., the Court declines to adopt the Magistrate Judge's Findings and Conclusions.

**IT IS FURTHER ORDERED** that with respect to Plaintiff's claim for emotional distress experienced in a racially hostile work environment that Plaintiff is entitled to recover the sum of $18,000.00 from Defendants as damages for the violation of his federal constitutional rights under Title VII of the Civil Rights Act.

**IT IS FURTHER ORDERED,** pursuant to 42 U.S.C. § 1988, awarding Plaintiff's attorneys the sum of $6,000.00 as attorney's fees with respect to this claim.

**IT IS FURTHER ORDERED** that the Clerk of the Court enter judgment in accordance with this order.

DATED this 11th day of April, 2007.

_____
Roger G. Strand
Senior United States District Judge